IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRYANT KEITH BRIGGS,

                Petitioner,

    vs.

JARED D. LOZANO, Acting Warden,
California Medical Facility,[1]

            Respondent.

No. 2:14-cv-01533-JKS

MEMORANDUM DECISION

Bryant Keith Briggs, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Briggs is in the custody of the

California Department of Corrections and Rehabilitation and incarcerated at the California

Medical Facility. Respondent has answered, and Briggs has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On January 23, 2008 Briggs was charged with residential robbery (Count 1); residential

burglary (Count 2); premeditated attempted murder (Count 3); kidnapping to commit robbery

(Count 4); and possession of cocaine base for sale (Count 5). The information alleged as to

Counts 1, 3, and 4 that Briggs personally inflicted great bodily injury on the victim and that

Briggs personally used a firearm in the commission of the offense as to Counts 1 and 2. On

direct appeal of his conviction, the California Court of Appeal laid out the following facts

underlying the charges against Briggs:

---

[1]     Jared D. Lozano, Acting Warden, California Medical Facility, is substituted for F.
Foulk, former Warden, High Desert State Prison. FED. R. CIV. P. 25(c).

At the time of the offenses, the victim, David Campbell, regularly got high, his drug of choice being crack cocaine. He went to the Jamestown Apartments because it was a gathering place for people to go to get and use drugs. On the date in question, he went to apartment 232 with Shonda Batson to get high and have sex. Campbell brought crack cocaine with him, which the two of them smoked.

After they smoked all of the crack he brought with him, they decided they wanted more. Campbell had no more money. Batson told Campbell she had some money and knew someone from whom she could buy drugs. She agreed to go get more drugs.

When Batson returned to the apartment, she had [Briggs] with her. Campbell saw Batson give money to [Briggs] and saw [Briggs] give crack cocaine to Batson. Campbell was hazy on the specifics, but he remembered [Briggs] saying something about money being owed and pointing to him (Campbell). Campbell told [Briggs] he just wanted the dope.

Batson proceeded to smoke the dope she purchased, and did not give any to Campbell. Campbell decided to leave, and went out to the walkway outside the apartment. [Briggs] was on the walkway. He told Campbell that Campbell owed him money for the dope. Campbell said he hadn't smoked any of the dope, and owed him no money. [Briggs] told Campbell that they needed to go back into the apartment and talk about it. About that time another man came up behind them, identified as Harvest Thomas, and Campbell felt surrounded. Campbell went back into apartment 232 with [Briggs] and Thomas, because he felt there would be violence if he refused.

After the trio was inside the apartment and the door was closed, [Briggs] and Thomas pulled guns on Campbell and demanded money. Thomas hit Campbell on the side of the head with his gun. Campbell opened his wallet to show that he had no money.

[Briggs] then demanded that Campbell take off his clothes. When Campbell had undressed, [Briggs] told him to go outside. Campbell refused. Campbell, deciding to fight back, grabbed Thomas, threw him across the stair rail, and grabbed his gun. Campbell and Thomas struggled. [Briggs] dived on top of them and the three fell onto the couch. [Briggs] pointed his gun at Campbell and shot him in the head.

Campbell survived the gunshot wound. He was treated in the emergency room for a gunshot wound to the left temple. The bullet lodged in Campbell's neck. Blood tests indicated Campbell's blood alcohol level was 0.097, and his urine tested positive for cocaine.

Campbell picked [Briggs] and Thomas out of separate photo lineups. When Campbell was shown [Briggs'] photograph he stated "He's . . . the guy that shot me."

Law enforcement first searched Thomas's residence. One of the items seized was a cell phone. There were pictures in the cell phone of clear plastic baggies containing a substance, of clear plastic baggies containing money, and of an individual fanning money. Also, the address book of the cell phone contained the name Brian and a phone number that was previously [Briggs'] phone number.

The next day, officers searched apartment 222 at the Jamestown Apartments, which belonged to [Briggs'] mother. The search uncovered a repair receipt, in [Briggs'] name for an automobile, and a mini scale.

[Briggs] was arrested in apartment 231 of the Jamestown Apartments, the apartment directly next door to the apartment where the shooting occurred.  In a search incident to the arrest, the officers found $886 in cash, three grams of marijuana packaged for sale, a small gram scale, a notebook which had buy-owe notations, and some .38–caliber bullets.

*People v. Briggs*, No. C064743, 2013 WL 257068, at *1-2 (Cal. Ct. App. Jan. 23, 2013).

Briggs pled not guilty to the charges, denied the accompanying allegations, and proceeded to a jury trial, the first of which ended in a mistrial as to all counts.  During voir dire in his second trial, defense counsel made a *Batson/Wheeler*[2] motion, arguing that the prosecutor had systemically excluded African-Americans from the jury.  The trial court ruled that Briggs had not established a *prima facie* case of racial bias and denied the motion.  At the conclusion of trial, the jury convicted Briggs of residential robbery, residential burglary, attempted murder, false imprisonment, and possession of cocaine base for sale.  The jury further found true allegations that Briggs had personally inflicted great bodily injury upon the victim and personally used a firearm in the commission of the offense.  After the trial court denied Briggs' motion for a new trial, it sentenced him to a term of 33 years and 8 months to life imprisonment.

Through counsel, Briggs appealed his conviction, arguing that: 1) the prosecutor's use of peremptory challenges to remove two African-American prospective jurors constituted racial bias; 2) the prosecution did not present legally-sufficient evidence that he possessed crack cocaine; 3) the trial court erred in instructing the jury that it could consider the witness's level of certainty in evaluating an eyewitness's identification; and 4) trial counsel rendered ineffective

---

[2]        *See Batson v. Kentucky*, 476 U.S. 79 (1986) (a shorthand reference to the procedure under which a prosecutor's peremptory strikes of potential jurors are challenged on the basis that the strikes are being made on a discriminatory basis, i.e., because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds); *People v. Wheeler*, 583 P.2d 748 (Cal. 1978) (the California counterpart to *Batson*).

assistance for a variety of reasons.  The Court of Appeal unanimously affirmed the judgment

against Briggs in a reasoned, unpublished opinion issued on January 23, 2013.  *Briggs*, 2013 WL

257068, at *11.  The California Supreme Court summarily denied review on April 10, 2013.  His

conviction became final on direct review 90 days later, when his time to file a petition for

certiorari in the U.S. Supreme Court expired on July 9, 2013.  *See Jiminez v. Quarterman*, 555

U.S. 113, 119 (2009); *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003).

Briggs timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on June

22, 2014.  Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Briggs raises five grounds for relief.  In the first

four claims, Briggs argues that trial counsel was ineffective for failing to: 1) retain an eyewitness

identification expert; 2) call certain witnesses at trial; 3) object to the admission of evidence

found in apartment 231 incident to his arrest there; and 4) object to the admission of evidence

found in apartment 222.  Briggs additionally argues that the prosecution impermissibly used a

peremptory challenge to excuse from the jury pool two African-American potential jurors.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  A summary denial is an adjudication on the merits and entitled to deference.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

**A.** *Ineffective Assistance of Counsel* **(Grounds 1-4)**

Briggs first argues that trial counsel was ineffective for a variety of reasons.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that appellate counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.  *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).  Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Briggs must show that counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

1.     *Failure to retain an eyewitness identification expert*

Briggs first faults counsel for failing to retain an eyewitness identification expert. He argues, as he did on direct appeal, that such expert was necessary to help the jury understand how Campbell's stress and head wound adversely impaired his memory, and to enable defense counsel to adequately cross-examine the office who had administered the photographic lineup to Campbell. The Court of Appeal considered and rejected this claim on direct appeal as follows:

> At the hearing on the motion, [Briggs] testified that prior to his trial he told his counsel multiple times he wanted to get an eyewitness expert. He claimed his counsel said that an expert was not necessary because the jury would be able to see that the victim had been high. [Briggs] further claimed that he had attempted to tell the court that he wanted such an expert, but that when he raised his hand, the court indicated he had to communicate through his attorney.
> [Briggs'] trial counsel testified at the hearing. He stated that he did not recall multiple discussions with [Briggs] about retaining an eyewitness expert. Counsel stated

that he had considered retaining an expert on eyewitness identification, but did not do so because after conferring with such an expert on a previous case, he concluded there were more cons than pros in presenting such expert testimony. He stated that an eyewitness identification expert could hurt a case where there was a lengthy period of contact between the witness and the suspect, there was no cross-cultural identification, and the suspect possessed unusual or memorable characteristics. Because of these considerations, he made a strategic decision that it would hurt [Briggs'] case to hire an eyewitness expert.

[Briggs'] claim of ineffective assistance fails because he has not shown that his counsel's performance was deficient. In determining whether counsel's performance was deficient, we accord great deference to the tactical decisions of counsel. We will not second-guess the reasonable tactical decisions of trial counsel. "[W]here the record shows that counsel's omissions resulted from an informed tactical choice within the range of reasonable competence, the conviction must be affirmed."

Trial counsel's decision not to call an eyewitness identification expert was within the range of reasonable competence. Even though the eyewitness victim was under the influence at the time of his interaction with [Briggs] and was under the stress of the situation during part of that interaction, the contact was prolonged and there was no cross-racial identification. Trial counsel's decision not to retain an eyewitness identification expert was justified.

*Briggs*, 2013 WL 257068, at *8 (citations omitted)

The Ninth Circuit remains sensitive to the issue of retaining and consulting with defense experts. *See, e.g.*, *Weeden v. Johnson*, 854 F.3d 1063, 1070-71 (9th Cir. 2017) (holding that trial counsel was deficient in failing to seek psychological evaluation about effect of petitioner's youth on her mental state); *Richter v. Hickman*, 578 F.3d 944, 953-54 (9th Cir. 2009) (en banc) (trial counsel's failure to consult an expert in blood evidence constituted ineffective assistance), *rev'd by Harrington v. Richter*, 562 U.S. 86 (2011). The cases finding ineffective assistance based on defense counsel's failure to consult with an expert or offer expert testimony appear to involve situations where the prospective defense expert testimony would: 1) exonerate the defendant; 2) conflict with powerful expert testimony offered by the Government; 3) significantly weaken adverse Government expert testimony; and 4) aid in preparing defense counsel's cross-examination of the adverse Government expert testimony.

Upon independent review, the Court concludes that the California courts' rejection of Briggs' claim was not unreasonable or contrary to clearly-established federal law. Defense counsel provided a rational reason to believe that the omission was the result of a tactical decision not subject to this Court's review.

None of the situations outlined above, where a federal court rejected as unreasonable a state court conclusion that trial counsel's failure to consult or call an expert witness did not violate *Strickland*, are applicable here. Moreover, the record shows that, even without the proposed defense expert testimony, defense counsel was able to deftly and effectively cross-examine the prosecution's witnesses as to the photographic lineup.

While it theoretically may have been helpful to Briggs to have additional evidence attacking the reliability of the eyewitness identification, it is too speculative to believe that there is a "reasonable probability sufficient to undermine confidence in the outcome" that the jury would have come to a different conclusion if this now-proffered expert evidence had been presented at trial. *Harrington*, 562 U.S. at 104 ("It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" (quoting *Strickland*, 466 U.S. at 693)). Moreover, the record fully supports defense counsel's belief that the proposed expert testimony would have caused more harm than good. Given the high bar required under *Strickland*, and in light of the deference this Court must afford the state court's decision, Briggs fails to prove that counsel was deficient, or that he was prejudiced by counsel's inaction. The U.S. Supreme Court has recently affirmed the deference to be afforded a state court's determination:

> In order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be "objectively unreasonable, not merely wrong; even

clear error will not suffice." *Woods v. Donald*, 575 U.S. ——, ——, 135 S. Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam ) (internal quotation marks omitted). In other words, a litigant must "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Ibid.* (internal quotation marks omitted). This is "meant to be" a difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011).

*Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017).

Under these standards, the Court cannot find that the state court's rejection of Briggs' ineffective assistance claim unreasonably applies or contravenes federal law. He is not entitled to relief on his ineffective assistance claim.

2.  *Failure to subpoena certain witnesses*

Briggs next contends that counsel was ineffective for failing to subpoena certain witnesses at trial. The Court of Appeal considered and rejected this claim as follows:

> [Briggs] asserts his trial counsel was ineffective because he did not subpoena Devazia Turner and Turner's mother, Penny Scott, for trial. One of the guns used in the shooting was found in Turner's possession in Sacramento. When Turner was apprehended with the gun, he was in the company of Kenneth Jefferson. In one photo lineup, Campbell said that Jefferson looked like one of the men who had attacked him. Scott originally claimed Turner told her that he got the gun from Jefferson, although both Turner and Scott later said the gun came from someone at a Sacramento light rail station.
>
> At the new trial motion, [Briggs's] trial counsel testified that he hired an investigator to look into the gun. He testified that it was his opinion that pursuing the investigation into the gun further might hurt [Briggs'] case. He stated that the investigator interviewed both Scott and Turner, and that Turner claimed someone gave him the gun at the light rail station in Sacramento. Scott backed up this story.
>
> Defense counsel stated he saw it as a dead end issue at that point. He testified that based upon the investigation he felt the circumstances of how the gun was found would only hurt [Briggs'] case. Counsel's decision not to subpoena these witnesses was within the range of reasonable competence, and does not constitute ineffective assistance of counsel.
>
> Moreover, [Briggs] has failed to establish prejudice. There is no evidence that Turner would have testified, since to do so would have implicated his Fifth Amendment right against self-incrimination. Turner's statements to his mother could not have come in as inconsistent statements without Turner testifying.

Briggs, 2013 WL 257068, at *10-11.

The Court of Appeal's rejection of this claim is both reasonable and fully supported by the record. Briggs does not provide evidence rebutting counsel's testimony that he investigated the issue of the gun and made the tactical decision not to call Turner or his mother as witnesses in light of their statements to the investigator. Moreover, Briggs did not show on direct appeal, and has not shown here, that Turner would have been willing to testify, what his testimony would have been, or that the testimony would have been sufficient to create a reasonable doubt as to Briggs' guilt. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that a witness would provide favorable testimony on petitioner's behalf is insufficient to establish *Strickland* prejudice); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). Briggs thus fails to show that counsel was ineffective with respect to this claim.

3.      *Failure to object to admission of evidence found in apartment 231*

Briggs next avers that counsel was ineffective for not objecting to the admission of objects recovered when officers searched apartment 231 incident to Briggs' arrest there. The Court of Appeal considered and rejected this claim as follows:

> Detective Robert Faine testified that officers searched apartment 231 because they had information that [Briggs] was staying there. When the officers knocked on the door of apartment 231, the door was opened by a woman named Nicole Tyler, and [Briggs] was standing at the back of the living room hallway near the bedroom. [Briggs] was arrested in the bedroom. There were four people in the apartment at the time of the arrest. [Briggs] was not the lessee of the apartment.
> [Briggs] argues there was no evidence establishing that he lived in apartment 231, or had actual or constructive possession of the items found there. He argues the items had no relevance unless they belonged to him, and his trial counsel should have objected to the evidence on that ground. He also argues his counsel should have objected to Faine's statement that he heard [Briggs] was staying in apartment 231 on hearsay grounds.
> [Briggs] relies heavily on *People v. Johnson* (1984) 158 Cal.App.3d 850, for the proposition that the evidence found in apartment 231 was irrelevant because there was no

11

showing the evidence belonged to him. In that case, the defendant was convicted of possessing phencyclidine (PCP) for sale. The defendant and several other people were discovered in a house during a police raid. The defendant and another person were in the kitchen, and police discovered a bottle of PCP in a hole in the ceiling with defendant's thumbprint. This being the sole evidence of possession, the court held it was insufficient to support a conviction. However, the court did not hold that the evidence was inadmissible.

Here, the possession conviction related to the cocaine base [Briggs] sold to Batson on the day of the shooting. Whether [Briggs] had sufficient dominion and control over the items in apartment 231 to possess them was not at issue. Instead, [Briggs'] presence at the particular location in the apartment near the room where several items indicative of drug sales were in plain view, had some tendency in reason to prove he was involved in the sale of drugs. This in turn had some tendency in reason to prove he was selling cocaine base on the day of the shooting. Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) An objection based on relevance would not have been justified, and defense counsel was not deficient in failing to make such an objection.[FN2]

> FN2. We acknowledge that the evidence of the small amount of marijuana packaged for sale was minimally relevant and the .38–caliber bullets were arguably not relevant to show [Briggs] was involved in the sale of drugs, but conclude [Briggs] has failed to establish he was prejudiced by the admission of such evidence, and we deny his ineffective assistance of counsel claim regarding such evidence on that ground.

As to the hearsay statement that defendant was "staying" at apartment 231, we cannot say on this record that trial counsel was deficient in failing to object. Had counsel made the objection, the prosecution may well have introduced evidence from the out-of-court declarant, whose testimony may have been more harmful to [Briggs]. Such an objection also would not have prevented the detective from describing the arrest and introducing the evidence discovered in the search, and may have drawn undue attention to the detective's brief mention that he heard [Briggs] was staying at the apartment.

*Briggs*, 2013 WL 257068, at *9-10.

Briggs fares no better on federal habeas review. As the Court of Appeal thoroughly explained, the vast majority of the physical evidence was clearly admissible under state law. Accordingly, counsel cannot be faulted for failing to make a meritless objection to it. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for

failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (internal citation omitted)); *Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel). The Court of Appeal noted that some of the evidence was only "minimally relevant" or "arguably not relevant," *Briggs*, 2013 WL 257068, at *9 n.2, but the court reasonably concluded that Briggs failed to establish prejudice by the admission of those items. With respect to the hearsay statement, the Court of Appeal reasonably concluded that counsel may have made a tactical decision to not object to the statement. Briggs is thus not entitled to relief on any argument advanced in support of his ineffective assistance claims.

4.  *Failure to object to admission of evidence found in apartment 222*

Similarly, Briggs contends that counsel was ineffective for not objecting to evidence found at his mother's house. However, as the Court of Appeal reasonably concluded:

> As with the items found in apartment 231, the issue was not whether there was sufficient evidence to show the items found there were [Briggs']. Instead, [Briggs] had ties to this apartment, as evidenced by the fact that his mother was found in the apartment, as was a receipt with his name on it. Also in the apartment was a scale associated with drug sales. The evidence was relevant, both for its tendency to show he was engaged in drug sales, and to show [Briggs'] connection to the apartment building where the shooting took place. The items were relevant to prove the identity of the perpetrator. Defense counsel was not required to make a baseless objection.

*Briggs*, 2013 WL 257068, at *10.

The Court of Appeal's rejection of this claim is similarly reasonable and fully supported by the record. Briggs is thus not entitled to relief on this claim.

**B.  *Batson/Wheeler Claim* (Ground 5)**

Briggs additionally argues the prosecution impermissibly used a peremptory challenge to excuse from the jury pool two African-American potential jurors. The Court of Appeal laid out the following facts underlying this claim:

Defense counsel cited two potential jurors excused by the prosecutor. The first was T.A. Defense counsel made the following comments about T.A.: "She was another African American female in my opinion. [¶] . . . [T.A.] was employed, eligibility worker, Alameda County. Said she could be fair. She answered all the questions properly. She did have a brother who was convicted of possession for sales. She said she could put that behind her. We kept her on the panel quite sometime [sic ], and then for no apparent reason, as far as I can understand, she was excused."

Defense counsel made the following comments about L.D.: "I believe that [L.D.] . . . she had [a] Hispanic surname but to me she was clearly black, African American. That was my take on it, Your Honor. [¶] . . . [¶] . . . She was a supervisor at Home Depot, supervised three hundred people, had three girls, answered all questions properly. Was left on the jury quite some time. And for no apparent reason as far as I can tell, she was excused."

Defense counsel also stated that [Briggs] and the victim in the case were African–American. The prosecutor referred to the fact that two other African–American prospective jurors had been excused for cause. One was excused for cause because she was breast-feeding. One was excused for cause because defense counsel had previously represented the man's son. Defense counsel stated that as of the time of the motion there were no other African–Americans on the jury. Following the motion, one more juror and three alternate jurors were seated. The record does not indicate their race.

The trial court first asked the prosecutor if he agreed that L.D. was African–American, stating that it did not appear to the court that she was. The prosecutor, who was African–American, stated that L.D. "did not in any way appear African American. Her complexion is [a] little bit darker than some individuals who happen to be Hispanic. She certainly seems to [fall] within the [ambit] of that social, racial group, however you classify that."

The prosecutor then proceeded to justify his challenges to the two potential jurors. He stated that the primary reason he excused T.A. was that her brother had been convicted for the sale of drugs, and he was dissatisfied with her answers when she was questioned about it. When asked, she stated: "He did it. He got caught." T.A. was one of the first potential jurors questioned, and as voir dire went along, the prosecutor stated he thought other jurors would be better, strategically, for the prosecution.

As to L.D., the prosecutor stated that her work was a positive factor in her favor, but that she had three young children and appeared to be under the age of 30. The prosecutor stated: "I didn't feel she had enough life experience based on what she outlined to be able to be on this particular jury. [¶] My preference in regards to jurors are individuals who are above the age of 35. If they're above the age of 35, I generally feel they have enough life experience to be able to, number one, understand and pick up

on credibility issues which come up on the stand. So based on that, I felt there was a superior juror. [¶] . . . [¶] Each of the individuals [who were put in L.D.'s chair] were all older than [L.D.] That's the primary reason I moved her down. It was a question of strategy. There was no other rationale for doing so."

*Briggs*, 2013 WL 257068, at *2-3.

The Equal Protection Clause prohibits purposeful racial discrimination in the selection of the jury. *Batson*, 476 U.S. at 86. In *Batson*, the Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause: 1) a defendant raising a *Batson* claim must establish a *prima facie* case of discrimination; 2) once a *prima facie* case of discrimination is established, the burden of offering race-neutral reasons for the strikes shifts to the prosecutor; 3) after the prosecutor offers race-neutral reasons, the trial court has the duty to determine if the defendant has established purposeful discrimination. *Paulino v. Harrison*, 542 F.3d 692, 699 (9th Cir. 2008) (citing *Batson*, 476 U.S. at 98).

A defendant's burden to establish a *prima facie* case at the first step and the prosecutor's burden to provide race- (or ethnic-) neutral reasons for the challenge at the second step are burdens of going forward with the evidence, while the defendant's burden at the third step is a true burden of persuasion to convince the court that the challenge was motivated at least in part by some prohibited group bias or prejudice. The ultimate burden of persuasion never shifts. *Batson*, 476 U.S. at 93; *see Purkett v. Elem*, 514 U.S. 765, 768 (1995).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" regarding *Batson* claims that "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). This "standard is doubly deferential: unless the state appellate

court was objectively unreasonable in concluding that the trial court's credibility determination was supported by substantial evidence, we must uphold it." *Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir. 2012).

1.      Juror L.D.

The Court of Appeal rejected Briggs' *Batson* claim as to L.D. because Briggs "failed to make a sufficient showing that L.D. was a member of the racial group he asserted the prosecution was attempting to keep off the jury.  Although defense counsel asserted that L.D. was Black, she had a Hispanic surname, and both the court and the prosecutor disagreed that L.D. was African–American." *Id.* at *3.  The Court of Appeal's conclusion is neither contrary to or an unreasonable application of federal law.[3]

2.      Juror T.A.

On direct appeal, Briggs argued that, because the trial court required the prosecutor to state the reasons for his peremptory challenges, the question of whether Briggs established a *prima facie* case as to T.A. was moot.  *See People v. Mills*, 226 P.3d 276, 293-95 (Cal. 2010) (where the trial court finds no *prima facie* case but permits the prosecutor to state her reasons and accepts the credibility of the reasons there is a first stage/third stage hybrid, the rejection of

---

[3]      It is worth nothing that the Supreme Court has held that criminal defendants may object to race-based peremptory challenges of jurors regardless of whether the defendant and the excluded juror are of the same race.  *Powers v. Ohio*, 499 U.S. 400, 415-16 (1991).  In so doing, however, the Court noted that it may be difficult to make a *prima facie* showing when the potential juror and the defendant are of different races.  *Id.* at 416.  Here, Briggs did not make his *Batson* motion with reference to all minority races, including those of Hispanic origin.  The defense motion was explicitly directed to the exclusion of African Americans from the jury, and the record is devoid of any reference to whether there were other potential jurors of another minority race.  The Court of Appeal thus did not contravene *Powers* when it concluded that Briggs failed to establish that L.D. was a member of the relevant class.

the *prima facie* case is moot, the reviewing court expresses no opinion on the presence of a *prima facie* case and skips directly to the third stage and determines in light of the prosecutor's reasons whether defendant has proved intentional discrimination).[4] The Court of Appeal disagreed, concluding that the trial court determined that no *prima facie* case had been established, and affirmed the trial court's ruling on that ground. *Briggs*, 2013 WL 257068, at *4.

To establish a *prima facie* case of discrimination under *Batson*'s first step, the defendant must show that: 1) the prospective juror is a member of a cognizable racial group; 2) the prosecutor used a peremptory strike to remove the juror; and 3) the totality of the circumstances raises an inference that the strike was on account of race. *Batson*, 476 U.S. at 96; *Crittenden v. Ayers*, 624 F.3d 943, 955 (9th Cir. 2010). The prosecutor's use of a peremptory strike to remove the African American juror satisfies the first two prongs of the inquiry; the question here is therefore whether the totality of the circumstances raises an inference that the strike was used on account of race. A defendant satisfies the requirements of *Batson*'s first step by producing

_____

[4] More recently, the California Supreme Court rethought *Mills* and like cases and concluded that where the trial court rules that there is no *prima facie* case but hears from the prosecutor and finds the prosecutor's race neutral reasons credible and denies a *Batson* challenge at the third stage, an appellate court should nevertheless rule on the *prima facie* case. *See People v. Scott*, 349 P.3d 1028, 1044-48 (Cal. 2015). Although Briggs' appeal pre-dated *Scott*, the Court of Appeal issued an opinion not inconsistent with the Supreme Court's directive in that case. The Court of Appeal explicitly rejected Briggs' contention that the trial court declined to address whether he had made a *prima facie* case: "Viewing the record as a whole and examining the remarks of the trial court and the prosecutor in context, it is clear the trial court did not require the prosecutor to state his reasons for challenging either juror. . . . Thus, nothing the court did converted the *Batson* step-one analysis into a step-three analysis." *Briggs*, 2013 WL 257068, at *4. The appellate court thus affirmed the trial court's no *prima facie* case determination. *Id.* This Court therefore reviews whether Briggs established a *prima facie* case and affords AEDPA deference to the Court of Appeal's determination that he did not. *See Tolbert v. Page*, 182 F.3d 677, 682 (9th Cir. 1999) (en banc).

evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. *Johnson v. California*, 545 U.S. 162, 170 (2005).

Here, the Court of Appeal relied on the correct legal standard—*Batson*—so the question is whether the appellate court unreasonably applied that case. Reviewing the totality of circumstances in this case does not raise an inference that discrimination has occurred. Although an inference of discrimination may be found where the prosecutor strikes a large or disproportionate number of panel members from the same racial group, Briggs does not make a statistical argument and, as the Court of Appeal noted, could not do so given the small numbers involved. *See United States v. Collins*, 551 F.3d 914, 921 (9th Cir. 2009) ("The lack of other African-Americans in the jury pool renders mathematical trends and patterns meaningless."); *Hargrove v. Pliler*, 327 F. App'x 708, 709 (9th Cir. 2009) (rejecting step one of *Batson* claim because it "hinges on a statistical argument involving very small numbers" that, "standing alone, is insufficient to establish a *prima facie* case in light of the ample legitimate reasons in the record for the prosecution's challenge").[5] The Court of Appeal concluded:

> We cannot infer improper discrimination from the record in this case where the prosecution excused a single African–American juror, and there was an absence of other

---

[5]  While "a *prima facie* case does not require a pattern because 'the Constitution forbids striking even a single prospective juror for a discriminatory purpose,'" *Collins*, 551 F.3d. at 919 (quoting *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994)), it is equally clear that "the striking of one juror of a cognizable racial group does not by itself raise an inference of discriminatory purpose," *Tolbert v. Gomez*, 190 F.3d 985, 988 (9th Cir. 1999); *see also Crittenden*, 624 F.3d at 955-57; *Gonzales v. Brown*, 585 F.3d 1202, 1206 (9th Cir. 2009). Thus, if after an objection the trial court finds no *prima facie* case but asks the prosecutor to disclose her reason and she were to say, "my reason should be obvious, the juror is African-American," the explanation would itself be sufficient to show a discriminatory motive without further evidence of plan or comparative jury analysis. But in the absence of an admission or other "smoking gun," there must be some evidence to support an inference, and a single challenge to a single juror standing alone cannot supply that evidence.

evidence that the juror was excused for a discriminatory purpose. That juror had a brother who had been convicted of selling drugs—a charge that was also made against [Briggs].

        Finally, when there is a lack of motive to exercise challenges based on group bias because race is not a factor in the case, courts have viewed this circumstance as a factor cutting against a prima facie finding of discrimination. There is a lack of motive to discriminate when, as here, the defendant and the victim are of the same race.

        [Briggs] failed to establish a prima facie case of discrimination. Therefore, the trial court properly denied the *Wheeler/Batson* motion.

*Briggs*, 2013 WL 257068, at *5 (citation omitted).

The Court of Appeal's determination is both reasonable and fully supported by the record. Nor is this decision contrary to *Batson*, and Briggs cites no other federal law, much less authority from the U.S. Supreme Court, that this determination contravenes or unreasonably applies. In sum, given the deference afforded to the Court of Appeal's affirmance of the trial court's finding, this Court must conclude that the trial court did not err in finding that Briggs failed to establish a *prima facie* showing of discrimination, and Briggs is not entitled to relief on this ground.

**C.**    *Evidentiary Hearing*

Finally, Briggs requests an evidentiary hearing as to all claims. A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963). *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005). In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Id.* at 670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superseded by statute as stated in Williams v. Taylor*, 529 U.S. 420 (2000).

As discussed above, Briggs has failed to assert a colorable claim for relief. *See Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding an evidentiary hearing is not required on issues which can be resolved on the basis of the state court record). Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts with respect to this claim, he has also failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2). Briggs' request for an evidentiary hearing must therefore also be denied.

## V. CONCLUSION AND ORDER

Briggs is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is directed to enter judgment accordingly.

Dated: March 22, 2019.

   /s/James K. Singleton, Jr.   
JAMES K. SINGLETON, JR.
Senior United States District Judge
